FILED
IN CLERK'S OFFICE

'16 AUG 5  AM 8 15

U.S. DISTRICT COURT
DISTRICT OF MASS.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES DICKEY<br>    Plaintiff | ) CIVIL ACTION NO. |
| | ) |
| v. | ) |
| | ) |
| CITY OF BOSTON, through the<br>    INSPECTIONAL SERVICE<br>    DEPARTMENT,<br>      Defendant | ) |
| | ) |
| EDWARD COBURN, individually and<br>    in his official capacity as lawyer<br>    for the City of Boston | ) |
| | ) |
| JAMES COTTER III, individually and<br>    in his official capacity as receiver<br>    for the Boston Housing Court | ) |
| | ) |
| MARYLOU MUIRHEAD, individually<br>    and in her official capacity as<br>    judge for the Boston Housing Court | ) |
| | ) |
| JEFFERY WINIK, individually and in<br>    his official capacity as judge for<br>    the Boston Housing Court | ) |
| | ) |
| MARTIN WALSH, individually and<br>    in his official capacity as mayor<br>    of the City of Boston | ) |
| | ) |
| WILLIAM CHRISTOPHER,<br>    individually and  in his official<br>    capacity as commissioner of<br>    Inspectional Service Department<br>    of  the City of Boston | ) |
| | ) |
| STEVEN AMARAL, | ) |
| | ) |
| KATIE AMARAL, | ) |
| | ) |
| JOSH FETTERMAN, | ) |
| | ) |

FRED STARIKOV,                          )
                                        )
ANDREW SIMPSON,                         )
                                        )
         Defendants                     )
_____)

### FIRST AMENDED VERIFIED COMPLAINT
### INTRODUCTION

1. This suit challenges the constitutionality of Massachusetts General Laws chapter 111, § 127I (the "Receivership Statute") and seeks preliminary and permanent injunctive relief barring it's enforcement. The receivership statute allows a municipality to petition a court for the appointment of a receiver to make repairs to a tenant occupied building. But, the Receivership Statute does not provide for notice of the pending petition to be posted at the premises that is the subject of the petition for receivership; the Receivership Statute itself fails to ensure that property owners will receive due process and, is thus, unconstitutional. The lack of service by not posting the subject premise is in violation of 42 U.S.C. 1983, furthermore the notice procedures employed by the City violates the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

2. This suite challenges defendants the City of Boston, Jeffrey Winik, Marylou Muirhead, and James Cotter's interpretation of the Receivership Statues, as to allow the implementation of general receiverships for subject property, which allows the court appointed receiver to seize and sell the subject property; and further requests declaratory relief as the Receivership Statute does not allow the implementation of general receiverships.

3. This suite challenges defendants the City of Boston, Jeffrey Winik, Marylou Muirhead, Edward Coburn and James Cotter's interpretation of the Receivership Statute, as to allow the implementation of receiverships for vacant property; and further requests declaratory relief as the Receivership Statute does not allow the implementation of receiverships for vacant properties.

4. This suit seeks compensation from Defendants James Cotter ("Cotter"), Steven Amaral, Katie Amaral, Andrew Simpson, Josh Fetterman, Fred Starikov, for property damage due to gross negligence that occurred from May 29, 2012 to date, when receiver James Cotter seized 495 East Fourth Street, South Boston, Massachusetts and 497 East Fourth Street, South Boston, Massachusetts.

5. This suit seeks compensation from Defendants James Cotter , Steven Amaral, Katie Amaral, Andrew Simpson, Josh Fetterman and Fred Starikov for property damage due to deliberate property damage/ destruction that occurred from May 29, 2012 to date, when receiver James Cotter seized 495 East Fourth Street, South Boston, Massachusetts and 497 East Fourth Street, South Boston, Massachusetts.

6. The Plaintiff further seeks declaratory and injunctive relief and monetary damages as restitution as well as treble damages to the Plaintiff for the defendants Edward Coburn, James Cotter, Jeffery Winik, Marylou Muirhead, Martin Walsh and William Christopher's violation as alleged herein pursuant to 18 U.S.C. § 1964(c) and 18 U.S.C. § 1964(d). This is a claim for which relief can be granted pursuant to Title IX of the Organized Crime Control Act of 1970, Public Law 91-452, 84 Stat. 922, commonly known and referred to as RICO, codified at 18 U.S.C. § 1961, et. Seq., and in particular for violations of 18 U.S.C. § 1962. This claim asserts violations of the

3

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, the Hobbs Act, 18 U.S.C. § 1951, and Mail Fraud, 18 U.S.C. § 1341.

7. During the relevant times, the Defendants Edward Coburn, Marylou Muirhead, Jeffrey Winik, Martin Walsh, William Christopher and James Cotter conspired to extort real property from the Plaintiff and other property owners in the City of Boston, (please note Martin Walsh and William Christopher joined the conspiracy on or about May 2014, Caliber and U.S. Bank joined the conspiracy on or about January 2015); the Defendants would place a building into receivership with the intention selling the targeted building to an associate at a reduced price.

8. The Plaintiff hereby reserves all rights to file further appropriate amendments to add additional parties and causes of action.

## PARTIES

9. Plaintiff James Dickey, is the owner of record of the property at issue in this matter, a three family dwellings located at 497 East Fourth Street in South Boston, (the "Property") Massachusetts; and was, (but is no longer), owner of record of the second property at issue, being a three family dwelling located at 495 East Fourth in South Boston, (together the "Properties").

10. Defendant, City of Boston ("City"), through the Inspectional Services Department, is a duly organized and existing municipal corporation under the laws of the Commonwealth of Massachusetts, charged with the enforcement of the State Sanitary and Building Codes pursuant to M.G.L. c. 111, § 127, *et seq* and M.G.L. c. 143, § 3 *et seq*.

11. Defendant, Edward Coburn, is an attorney for Inspectional Services Department of the City of Boston, who is believed to reside in West Roxbury, Massachusetts.

12. Defendant, James Cotter III, is an attorney who the Boston Housing Court has appointed as receiver for the Properties, who is believed to reside in Quincy, Massachusetts.

13. Defendant, Marylou Muirhead, is a judge at the Boston Housing Court, who is believed to reside in the Wellesley, Massachusetts.

14. Defendant, Judge Jeffery Winik, is a judge at the Boston Housing Court, who is believed to reside in Newton, Massachusetts.

15. Defendant, Martin Walsh, is the mayor of the City of Boston, who is believed to reside in Dorchester, Massachusetts.

16. Defendant, William Christopher, is the commissioner of the Inspectional Service Department of the City of Boston, who is believed to reside in Dorchester, Massachusetts.

17. Defendant, Steve Amaral, is a co-owner of MassJunk.com, who is believed to reside in Medford, Massachusetts.

18. Defendant, Katie Amaral, is a co-owner of MassJunk.com, who is believed to reside in Medford, Massachusetts.

22. Defendant, Josh Fetterman, is a contractor who works for City Realty Group, LLC, and who is believed to reside in Newton, Massachusetts.

23. Defendant, Fred Starikov, is a co-owner of City Realty Group, LLC, and who is believed to reside in Brighton, Massachusetts.

24. Defendant, Andrew Simpson, is the owner of Lead Safe Homes LLP and works for/with City Realty Group, and who is believed to reside in Mattapan, Massachusetts.

## JURISDICTION

25. Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action challenges the constitutionality of certain provisions of the laws of the Commonwealth of Massachusetts under the United States Constitution.

26. Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1343(a)(3)-(4) because this action seeks to redress the deprivation, under color of state statute, of rights secured by the United States Constitution pursuant to 42 U.S.C. § 1983 and to secure equitable and other relief under an act of Congress for the protection of civil rights.

27. Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2201 because this action seeks declarations of Plaintiff's and Defendants' rights and legal relations.

28. Federal subject matter jurisdiction is proper in this Court pursuant to Title 18 of the United States Code § 1961 through 1968, 18 U.C.S. §1951 and 18 U.C.S. §1341.

## VENUE

29. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as all of the events or omissions giving rise to these claims arose within this division.  The venue is proper in this district pursuant to 18 U.C.S. § 1965(a), since the Defendants transacts affairs and resides in this district.

## RELEVENT TIMES

30. The relevant times to this Complaint are from on or about May, 2012 through and
continuing to the filing of this claim.

## FACTUAL BACKGROUND

## RECEIVERSHIP STATUTE

### Violation of Civil Rights Act (42 U.S.C. § 1983)

**199-201 Athens**

31. On April 3, 2000, the City issued a vacate order for 199-201 Athens Street, South
Boston, Massachusetts, owned by Jadwiga Rockalska.

32. On January 16, 2002, the city filed a petition, pursuant to the Receivership Statute, in
the Boston Housing Court for the appointment of a receiver for 199-201 Athens
Street.  Following several unsuccessful attempts to personally serve Rochalska with
the petition, the city's motion for service by publication was allowed, and on March
19, 2002, the petition was granted ex-parte and Jonathan Kaye was appointed
receiver.

33. After Jonathan Kaye began gutting the building located at 199-201 Athens Street, a
friend of Rochalska informed her of the receivership.  On April 5, 2002, Rochalska,
through an attorney, filed a motion supported by affidavits to stay the receivership
claiming that she was never served with notice of the proceedings.

31. Upon information and belief, the City never posted a notice of the pending petition
for receivership on the vacant property located at 199-201 Athens Street, as the
Receivership Statute does not require that notice of the petition for receivership be
posted on the subject property.

7

**20 Claybourne Street**

32. On August 27, 2003, the City issued a vacate order for 20 Claybourne Street, Dorchester, Massachusetts ("20 Claybourne Street"). On October 8, 2003, the City sent a request to the Massachusetts Attorney General Office to place 20 Claybourne Street into receivership.

33. Sometime in 2004, the Massachusetts Attorney General Office filed a petition for receivership, pursuant to the Receivership Statute, with the Boston Housing Court for the unoccupied building at 20 Claybourne Street. Notice was provided by publication, (as the property was vacant), the petition was granted ex-parte and Jonathan Kaye was appointed receiver.

34. Upon information and belief, the City never posted a notice of the pending petition for receivership on the vacant property located at 20 Claybourne Street, as the Receivership Statute does not require that notice of the petition for receivership be posted on the subject property.

**12 Sutton Street**

35. Sometime prior to September, 2008 the City issues a vacate order for 12 Sutton Street, Mattapan, Massachusetts ("12 Sutton Street"). On September 12, 2008, the Boston Housing Court allowed the City's motion for service by publication, and subsequently allowed a petition for receivership, pursuant to the Receivership Statute, on or about October 29, 2008.

36. Upon information or belief, the City never posted a notice of the pending petition for receivership on the vacant property located at 12 Sutton Street, Mattapan,

Massachusetts, as the Receivership Statute does not require that notice of the petition for receivership be posted on the subject property.

**495-497 East Fourth Street**

37. On May 27, 2008, the City issued a vacate order for 495 and 497 East Fourth Street, South Boston, Massachusetts (the "Properties").

38. On May 9, 2012, the City's attorney Defendant Edward Coburn sent an email to Plaintiff James Dickey, asking for access to the Properties to inspect said Properties, but never mentioned the petition for receivership. On May 9, 2012, the City submitted a petition for receivership, pursuant to the Receivership Statute, to the Boston Housing Court, which was subsequently granted ex-parte. Service was attempted by delivering notice of the petition for receivership to James Dickey's sister, who never informed him of signing for a package on his behalf.

39. On June 20, 2012, a hearing occurred at the Boston Housing Court were the Counter-Claimants asked the Court to either dismiss the receivership petition due to insufficient service, or in the alternative stay the receivership until a hearing on the merits of the petition for receivership could occur; Judge Muirhead denied this motion.

40. Notice of the petition for receivership was never posted at the Properties, (which were vacant at the time), as the Receivership Statute does not require that notice of the petition for receivership be posted on the subject property; ironically, the City did posted an administrative search warrant on the Properties on or about May 12, 2012.

## INTENTIONAL PROPERTY DAMAGE and NEGLIGENCE

41. On May 29, 2012, Defendant James Cotter seized the Properties, and has refused the Plaintiff access to the Properties.  On or about June 2014, Cotter hired Steven and Katie Amaral to strip 497 East Fourth Street of copper piping, appliances, bath tubs and doors, causing an estimated damage of excess of $100,000.00.  Again, on or about May 2015, Cotter hired Andrew Simpson, Josh Fetterman, (both who are employed and/or associated with Fred Starikov, who has apparently developed a business relationship with Cotter in order to obtain construction contracts in which he can overbill for his work), to strip the roof off the Property for the purpose of leaving the building open and exposed to the elements.  The roof at the Property was removed on or about August 2015, a new roof was not installed until December 2015, (for a duration of about five months the Property received significant water damage, estimated in excess of $200,000.00.

42. On or about July 2015, U.S. Bank Trust N.A. ("U.S. Bank"), (Trustee of LSF9 Master Participation Trust, who has a mortgage on the Property) and Caliber Home Loans Inc., ("Caliber") entered into an agreement with Cotter in that LSF9 Master Participation Trust would finance the removal of the roof at the Property, (for the purpose of causing significate damage to the Property), in return Cotter was to present a motion to the Boston Housing Court indicating that he has finished "repairing" the Property, and ask the Court for permission to foreclose on the Property for payment of his receiver's fees.  U.S. Bank and Caliber were then planning to purchase the Property at the receiver's foreclosure sale at a substantial discount, as agreed upon, (as the Property is in receivership, no one can obtain bank financing of the Property

because the Receivership Statute allows the receiver a first place position lien on the subject property).   U.S. Bank would then pay Cotter's receiver fee of about $40,000.00;  the receivership case would then be promptly dismissed, allowing U.S. Bank/Caliber to subsequently sell the Property free and clear of all liens, for an estimated gain of about $600,000.00.

## RICO

43. During the relevant times, the defendants Edward Coburn, Marylou Muirhead, James Cotter, Jeffery Winik, Martin Walsh, William Christopher, (Martin Walsh and William Christopher joined the conspiracy on or about May 2014), U.S. Bank and Caliber, (U.S. Bank and Caliber joined the conspiracy on or about January 2015), conspired to extort real property from the Plaintiff and other property owners in the City of Boston.  The City would first find a building uninhabitable and issue a vacate order, pursuant to CMR 410.831 of the Massachusetts Sanitary Code.  Edward Coburn, (with the consent of Martin Walsh and William Christopher), would then submit a petition to the Boston Housing Court, pursuant to the Receivership Statute, requesting that the building be placed into receivership.

44. To ensure that the owners of the building were unaware of the pending petition for receivership, the City would declare that the City was unable to locate the owner of the now vacant building and would then submit a motion to the Court requesting that notice be provided by publication; Judge Muirhead or Judge Winik would subsequently approve the petition for receivership ex-parte.

45. Upon seeing the receiver's activity at the subject building, (being that the receiver would seize the building by place a padlock on the building), the property owner, now

aware of the receivership, immediately submits a motion to the Boston Housing Court requesting that the receivership be dismiss due to lack of notice, which is subsequently be denied by Judge Muirhead or Judge Winik.

46. Upon appointment as receiver for the subject property, James Cotter submits a *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property*, stating that there are no funds to repair the building and asks the Court for authorization to sell the offending property; the motion is subsequently approved by Judge Muirhead, (or Judge Winik). In the Receiver's motion, Cotter estimates what **he** thinks is the dollar amount to rehab the building, which Judge Muirhead (or Judge Winik) in her *Final Judgment and Order* require be deposited to the Court within fourteen days. If the funds are not deposited within the fourteen days, receiver Cotter is then allowed to sell the subject property.

47. Upon authorization to sell the subject property, receiver James Cotter executes a deed and sells the property to an associate at a reduced rate; and is further compensated in the amount of about $20,000.00 for this transaction, as his agreed upon hourly rate is $350.00. Cotter never repairs the building, as required by the Receivership Statute, but instead sells the subject building to an associate at a substantial discount.

**12 Sutton Street scheme**

48. On or before October 29, 2008 the above scheme was put into operation as a petition for receivership, submitted to the Boston Housing Court by Edward Coburn, was granted ex-parte by Judge Muirhead and James Cotter was appointed receiver for the building located at 12 Sutton Street, Mattapan, Massachusetts ("12 Sutton Street"). Upon appointment, James Cotter submitted a *Receivers Motion for Final Judgment,*

*for Order Enjoining Nuisance and for Authorization to Sell Property*, which was allowed by Judge Muirhead on March 6, 2009. The *Final Judgment and Order* required the property owner to deposit $300,000.00 to the Court within 14 days, the Order further stated if the property owner failed to deposit the required funds, "the Receiver is authorized, after public marketing, to sell ... the Property".

49. Upon default, receiver James Cotter placed the subject property on the "public market" on March 24, 2009, requiring that offers were due by March 31, 2009. On April 3, 2009, James Cotter submitted a motion to the Boston Housing Court, asking for authorization to accept an offer of $115,000.00 from Vu Cuong for 12 Sutton Street, this motion was approved by Judge Muirhead; a deed was subsequently executed on April 27, 2009. Receiver James Cotter received his agreed $350.00 per hour compensation in the amount of $14,000.00 from the sale of 12 Sutton Street, without ever repairing the subject property.

50. The buyer of 12 Sutton Street, Vu Cuong, is well known to receiver James Cotter as he has also work with the Boston Housing Court's other receiver, Jonathan Kaye. Receiver Kaye hired Vu Cuong as a contractor for two properties that the Boston Housing Court was considering to appoint Jonathan Kaye as receiver. One of these properties was 20 Claybourne Street, Dorchester, and the other being 36 Savin Street, Roxbury, Massachusetts. (Please note that 36 Savin Street is the house that was **never** mentioned in the Rochalska case, and if known, would of greatly affected the outcome of that case, as Kaye relayed to the Rochalska court, under oath, that he had no other "projects" occurring while he was repairing the Rochalska house.)

51. Furthermore, receiver James Cotter sold Vu Chong and his family at least four building that were into his care, the above mentioned 12 Sutton Street and the following: on December 20, 2002 receiver James Cotter sold the property at 383-385 Blue Hill Avenue to Minh Hoang Vu for $155,000.00; on December 23, 2004, receiver James Cotter sold the property at 37 Regent Street to Quang Vu for $290,000.00; and on January 25, 2001, receiver James Cotter sold the property at 69 Highland Street to Vu Cuong for $125,000.00; as each of these buyers are members of the Vu family who reside at 320-340 Adams Street, Quincy, and have an office at 153 Pleasant Street, Dorchester.

**24 Seaver Street scheme**

52. On or before December, 2010 the above scheme was again put into operation as a petition for receivership, submitted to the Boston Housing Court by Edward Coburn, was granted by Judge Winik and James Cotter was appointed receiver for the building located at 24 Seaver Street, Dorchester, Massachusetts ("24 Seaver Street"). Upon appointment, James Cotter submitted a *Receivers Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property*, which was allowed by Judge Winik on March 29, 2011. The *Final Judgment and Order* required the property owner to deposit $577,200.00 to the Court within 14 days, the Order further stated if the property owner failed to deposit the required funds, "the Receiver is authorized, to sell" the subject property. On March 29, 2011, receiver James Cotter submitted a motion to the Boston Housing Court, asking for authorization to accept an offer of $525,000.00 from Trinity Green LLC for 24 Seaver Street, the motion was approved by Judge Winik; a deed was subsequently executed on May 19, 2011.

Again, receiver James Cotter received his agreed compensation of $350.00 per hour in the amount of $20,825.00 from the sale of 24 Seaver Street, without ever repairing the subject property.

**70 Bowdoin Street scheme**

53. On or before November, 2011 the above scheme was again put into operation as a petition for receivership, (pursuant to the Receivership Statute), submitted to the Boston Housing Court by Edward Coburn, was granted by Judge Muirhead and James Cotter was appointed receiver for the building located at 70 Bowdoin Street, Dorchester, Massachusetts ("70 Bowdoin Street").  Upon appointment, Cotter submitted a *Motion for Authorization to List Property for Sale*, which was allowed on August 27, 2012.  On February 20, 2013, James Cotter submitted a *Motion to Accept Offer to Purchase Receivership Property,* which was approved by Judge Muirhead.  On March 27, 2013, receiver James Cotter again submitted a motion to the Boston Housing Court, asking for authorization to accept an offer of $145,000.00 from Trinity Green LLC for 70 Bowdoin Street, the motion was approved by Judge Winik; a deed was subsequently executed on May 13, 2013. The Order issued by Judge Winik approving the sale of 70 Bowdoin Street states that "the Receiver is authorized, to sell" the subject property. This Order was mailed to the owner of the subject building via U.S. Mail on or about April 12, 2013, and contains the false statement that the Boston Housing Court has the authority to sell the subject property.  Cotter subsequently submitted to the Court a motion asking approval of his agreed compensation of $350.00 per hour, which was approved.

15

**115 Bowdoin Street scheme**

54. On or before June, 2012, the above scheme was again put into operation as a
petition for receivership, (pursuant to the Receivership Statute), submitted to the
Boston Housing Court by Edward Coburn, was granted and James Cotter was
appointed receiver for the building located at 115 Bowdoin Street, Dorchester,
Massachusetts ("115 Bowdoin Street").  Upon appointment, James Cotter
submitted a *Motion for Authorization to List Property for Sale*, and subsequently
submitted a Motion asking for authorization to accept an offer of $266,000.00
from Thuy Pham for 115 Bowdoin Street, the motion was approved by Judge
Muirhead; a deed was subsequently executed on February 28, 2013. The Order
issued by Judge Muirhead approving the sale of 115 Bowdoin Street states that
"the Receiver is authorized, to sell" the subject property. This Order was mailed to
the owner of the subject building via U.S. Mail on or about December 14, 2012,
and contains the false statement that the Boston Housing Court has the authority to
sell the subject property.  Again, receiver James Cotter received his agreed
compensation of $350.00 per hour in the amount of $11,130.00 from the proceeds
of the sale of 115 Bowdoin Street, without ever repairing the subject property.

**9 Everett Street Scheme**

55. On or before January 23, 2015 the above scheme was again put into operation as a
petition for receivership, (pursuant to the Receivership Statute), submitted to the
Boston Housing Court by Edward Coburn, (with Martin Walsh's and William
Christopher's consent), was granted by Judge Muirhead;  James Cotter was
appointed receiver for the building located at 9 Everett Street, Dorchester,

Massachusetts ("9 Everett Street").  Upon appointment, Cotter submitted a *Motion for Authorization to List Property for Sale*, which was allowed on August 28, 2015.  On November 12, 2015, James Cotter submitted a *Motion to Accept Offer to Purchase Receivership* Property;  a deed was subsequently executed by Cotter on March 30, 2016 for $270,000.00.  The Order issued by Judge Muirhead allowing Cotter to list the property for sale was mailed to the parties involved in the case via U.S. Mail on or about August 28, 2015, and contains the false statement that the Boston Housing Court has the authority to sell the subject property.  Cotter subsequently submit to the court a motion asking approval of his compensation of $350.00 per hour, which was allowed as it has been agreed upon.

**11 Everett Street Scheme**

56. On or before May 22, 2015 the above scheme was again put into operation as a petition for receivership, (pursuant to the Receivership Statute), submitted to the Boston Housing Court by Edward Coburn, (with Martin Walsh's and William Christopher's consent), was granted by Judge Muirhead;  James Cotter was appointed receiver for the building located at 11 Everett Street, Dorchester, Massachusetts ("11 Everett Street").  Upon appointment, Cotter submitted a *Motion for Authorization to List Property for Sale*, which was allowed on August 28, 2015.  On November 12, 2015, James Cotter submitted a *Motion to Accept Offer to Purchase Receivership* Property;  a deed was subsequently executed by Cotter on March 30, 2016 for $270,000.00.  The Order issued by Judge Muirhead allowing Cotter to list the property for sale was mailed to the parties involved in the case via U.S. Mail on or about August 28, 2015, and contains the false

statement that the Boston Housing Court has the authority to sell the subject
property.  Cotter subsequently to submit to the court a motion asking approval of
his compensation of $350.00 per hour, which was allowed as it has been agreed
upon.

**495-497 East Fourth Street scheme**

57. On or before May 12, 2012 the above scheme was again put into operation as a
petition for receivership, submitted to the Boston Housing Court by Edward Coburn,
was granted ex-parte by Judge Muirhead and James Cotter was appointed receiver for
the buildings located at 495-497 East Fourth Street, South Boston, Massachusetts
("the Properties");  on May 29, 2012, James Cotter seized the Properties and placed
padlocks on all doors.[1]  On or about April 2012 Endeavor Capital LLC ("Endeavor"),
the second place mortgage holder on the Properties, petitioned the City of Boston to
have James Cotter appointed as receiver for the Properties, which then allowed
Endeavor to conduct a foreclosure sale on 495 East Fourth Street[2] and sell the
building to Andrew Schena.   As of May 30, 2016, James Cotter has yet to do any
repairs to the Properties, (beyond placing a new roof on the Property),  the amount
currently due on Cotter's receiver fee is estimated over $40,000.00, and the damages
inflicted to the Properties by Cotter during the duration of the receivership is in
excess of $300,000.00);  the allegations contained in this Claim resulted in a four year
stand-off.

---

[1]   The receivership for the Properties has continued with the consent of both Martin
      Walsh and William Christopher.

[2]   Endeavor subsequently recorded a foreclosed deed pursuant to a foreclosure sale and
      an entry to foreclose mortgage, (the entry to foreclose indicates that defendant Fred
      Starikov witnessed the entry).

58. As previously mentioned, on or about July 2015, U.S. Bank, (Trustee of LSF9 Master
Participation Trust, who on January 5, 2015 purchased the mortgage on the Property
during the ongoing receivership case), and Caliber Home Loans Inc., entered into an
agreement with Cotter in that LSF9 Master Participation Trust would finance the
removal of the roof at the Property, (for the purpose of causing significate damage to
the Property), in return Cotter was to present a motion to the Boston Housing Court
indicating that he has completed "repairing" the Property, and ask to foreclose on the
Property for payment of his receiver's fees.  U.S. Bank and Caliber were then
planning to purchase the Property at the receiver's foreclosure sale at a substantial
discount, as agreed upon, (as the Property is in receivership no bank will finance the
purchase of the Property because the Receivership Statute allows the receiver a first
place position lien on the subject property).  U.S. Bank would then pay Cotter's
receiver fee of about $40,000.00;  the receivership case would be promptly dismissed,
allowing U.S. Bank to subsequently sell the Property free and clear of all liens, for an
estimated gain of about $600,000.00.   On or about January 19, 2016 Cotter served
each party involved in the receivership case, (via U.S. Mail), a motion asking to
foreclose on the Property, claiming his job is done here; this motion has yet to be
acted on by Judge Muirhead.

59. Due to the allegations in this Complaint, U.S. Bank, Caliber, and Cotter subsequently
decided the best course of action for the racketeering scheme to occur was to have
U.S. Bank and Caliber foreclose on the Property, (as Endeavor had with 495 East
Fourth Street).  While this course of action would result in a higher sale price, U.S.
Bank, Caliber and Cotter would then have the excess foreclosure proceeds deposited

with the Boston Housing Court, allowing the Defendants to further extort the funds.

On May 4, 2016, U.S. Bank and Caliber conducted a foreclosure sale for 497 East

Fourth Street,[3] selling the building to Andrew Schena, (being the same individual

who purchases 495 East Fourth Street).   On or about May 18, 2016, U.S. Bank and

Caliber, served each party via U.S. Mail and submitted a motion to the Boston

Housing Court asking for approval of the said mentioned foreclosure, and further

asked that the Boston Housing Court order that the surplus foreclosure funds of about

$475,000.00 be deposited into the Boston Housing Court;  defendant Judge Muirhead

approved the motion and has directed U.S. Bank and Caliber turn over the fund to the

Boston Housing Court within 30 days.

## COUNTS

**COUNT ONE**

**Receivership Statute**

**Violation of Civil Rights Act (42 U.S.C. § 1983)**

### (as for defendants City of Boston, Edward Coburn, James Cotter, Marylou Muirhead, Jeffrey Winik, Martin Walsh, William Christopher)

59. Plaintiff  incorporate by reference each preceding paragraph of the Complaint as if

    fully restated herein and further allege as follows:

60. Defendants are persons who, under color of statute, ordinance, regulation, custom, or

    usage, of the Commonwealth of Massachusetts are subjecting, or causing to be

---

[3]   On March 31, 2016, the Plaintiff emailed a copy of the Verified Complaint to U.S.
      Bank and Caliber's attorney; upon receipt, U.S. Bank and Caliber decided to
      postpone the April 4, 2016 foreclosure, but subsequently decided to proceed with the
      foreclosure.   The said mentioned Verified Complaint, which was filed in the instant
      case on April 1, 2016, indicates in great detail the ongoing racketeering scheme in
      which U.S. Trust and Caliber have knowingly joined and participated in.

subjected, Plaintiff the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

61. Defendants' conduct violates 42 U.S.C. § 1983. The City first finds a building in violation of the State Sanitary Code, and issues a vacate order by way of condemning the building pursuant to 410.830. This process disturbs the "last and usual" of an owner occupant. The City then petitions the Boston Housing Court for receivership of the subject property, but as the building is now vacant, the City seeks notice by publication since the whereabouts of the owner is unknown. The City never posts the pending petition for receivership on the subject property, as M.G.L. c.111, § 127I, (the "Receivership Statute"), does not require notice be also provided by posting the subject property. The City has placed numerous building into receivership by serving service by publication, pursuant to Mass. R. Civ. P. 4(d)(1), just a few of these cases are City of Boston v. Rochalska, City of Boston v. Stephen Powell, City of Boston v. Ann Brown.

62. The lack of service by not posting the subject premise is in violation of 42 U.S.C. 1983 and the notice procedures employed by the plaintiff violates the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice Plaintiff reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 339 U.S. 314.

21

63. Furthermore, the Receivership Statue does not apply to vacant buildings, as the statue states that a receiver shall be appointed only if "the court determines that such appointment is in the best interest of occupants residing in the property", *M.G.L. c.111, § 127I;* if the property is not tenant occupied then the court entertaining the petition is barred from appointing a receiver as the Receivership Statue further states that the receiver's "rights, duties and powers shall be specified by the court in accordance with the provisions of this section". *Id.* In addition, the Receivership Statute does not allow the Defendants to sell the subject property to their friends.[4]

64. Without relief from this Court, the Defendants, acting under color of statute, ordinance, regulation, custom, or usage, of the Commonwealth of Massachusetts, and will continue to subject, or cause to be subjected, Plaintiff and other property owners to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

---

[4]    The question as to whether the Boston Housing Court can implement a general receivership was previously addressed by the Massachusetts Appeals Court in *Perez v. Boston Housing Authority;* the *Perez* Court held "there is strength in the position that while Section 127I is naturally geared to the prospect of many homely occasions for rent receiverships of single private properties which become offensive to the sanitary code, the section, especially in the light of its second sentence ("such powers and duties as the court shall determine"), can be read together with Section 127H(d) to empower the court on compelling facts to install a receivership of broader coverage, not limited to a single property or to the rents". *Perez v. Boston Housing Authority,* 379 Mass 703 at 731, 400 N.E.2d 1231 (1980).   In response to the *Perez* ruling, the Massachusetts Legislative Branch amended the Statute in part, by deleting "such powers and duties as the court shall determine" and replaced the phrase with "[receivers] rights, duties and powers shall be specified by the court in accordance with the provisions of this section", and further restricted the general equity powers of the Boston Housing Court by inserting: "nor shall appointment of a receiver suspend any obligation the owner or any other person may have for payment of taxes, of any operating or maintenance expense, or of mortgages or liens, or for repair of the premises".

## COUNT TWO

**Receivership Statute**

**Declaratory Relief (28 U.S.C. § 2201)**

**(as for defendants City of Boston, Edward Coburn, James Cotter, Marylou Muirhead, Jeffrey Winik, Martin Walsh, William Christopher)**

65. Plaintiff  incorporate by reference each preceding paragraph of the Complaint as if fully restated herein and further allege as follows:

66. A defined and concrete controversy of a justifiable nature exists between Plaintiff and Defendants concerning the constitutionality of the challenged Massachusetts laws in that Plaintiffs claim that the challenged Massachusetts laws violate the due process requirements of the Fifth and Fourteenth Amendment of the United States Constitution, whereas Defendants maintain that the challenged Massachusetts laws are valid and enforceable.

67. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should determine Plaintiff and Defendants' rights and legal relations and declare that the challenged Massachusetts law, (M.G.L. c.111, § 127I), violate the due process requirements of the Fifth and Fourteenth Amendment of the United States Constitution and therefore is invalid and unenforceable.

68. A defined and concrete controversy of a justifiable nature exists between Plaintiff and Defendants concerning the interpretation of the Receivership Statute, in that the Plaintiff claim that the Receivership Statute limits the actions of the court appointed receiver to those allowed by the Receivership Statute, whereas Defendants maintain that the Receivership Statute allows the court to appoint a general receivership, which in turn allows the receiver to sell the subject property.

69. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should determine Plaintiff and Defendants' rights and legal relations and declare that the challenged Massachusetts law, (M.G.L. c.111, § 127I), does not allow a court to implement a general receivership for a subject property, and further does not allow a court appointed receiver to sell the subject property.

70. A defined and concrete controversy of a justifiable nature exists between Plaintiff and Defendants concerning the interpretation of the Receivership Statute, in that the Plaintiff claim that the Receivership Statute does not allow the implementation of receiverships for vacant property, whereas Defendants maintain that the Receivership Statute allows the court to appoint a receivership for vacant property.

71. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should determine Plaintiff and Defendants' rights and legal relations and declare that the challenged Massachusetts law, (M.G.L. c.111, § 127I), does not allow a court to implement a receivership for a vacant property.

**COUNT THREE**

**Receivership Statute**
**Equitable and Ancillary Relief (28 U.S.C. § 2202)**

**(as for defendants City of Boston, Edward Coburn, James Cotter, Marylou Muirhead, Jeffrey Winik, Martin Walsh, William Christopher)**

72. Plaintiff incorporate by reference each proceeding paragraph of the Complaint as if fully restated herein and further allege as follows:

73. Plaintiff, as a consequence of the unconstitutionality of the challenged

Massachusetts law, (M.G.L. c.111, § 127I), and the violation of their constitutional rights, are entitled to equitable and ancillary relief including preliminary and permanent injunctive relief.

74. Preliminary injunctive relief is justified because:

  a.  Plaintiff is likely to succeed on the merits;

  b.  Plaintiff is likely to suffer irreparable harm if the injunction is denied because enforcement of the challenged Massachusetts law is a continuing violation of Plaintiff's constitutional rights;

  c.  The continuing harm inflicted upon Plaintiff by the challenged Massachusetts laws outweighs any imposition, hardship, or harm that would stem from enjoining their enforcement; and

  d.  Enjoining the challenged Massachusetts law serves the public interest.

75. Permanent injunctive relief is justified because Plaintiff has no adequate remedy at law to protect them from the continuing threat of enforcement of the challenged Massachusetts, (M.G.L. c.111, § 127I), and the chilling effect these laws have upon the exercise of Plaintiff's constitutional rights. Indeed, any other remedy this Court may award would be attended with such uncertainties as to deny substantial relief, involve a multiplicity of suits, and cause further irreparable injury to Plaintiff. Further, permanent injunctive relief is justified because:

  a.  Plaintiff will prevail on the merits;

  b.  Plaintiff will suffer irreparable injury in the absence of injunctive relief because enforcement of the challenged Massachusetts laws is a continuing violation of Plaintiff's constitutional rights;

    c.  The continuing harm inflicted upon Plaintiff by the challenged Massachusetts law outweighs any imposition, hardship, or harm that will stem from enjoining their enforcement; and

    d.  Enjoining the challenged Massachusetts law serves the public interest.

76. Pursuant to 28 U.S.C. § 2202, this Court should grant Plaintiff's preliminary and permanent injunctive relief enjoining Defendants, their agents, servants, and employees and all other persons acting on behalf of, through the authority of, or in concert with them from enforcing the challenged Massachusetts law, (M.G.L. c.111, § 127I).

## COUNT FOUR

**Negligence**

    **(as for James Cotter, Steven Amaral, Katie Amaral, Fred Starikov, Andrew Simpson, Josh Fetterman)**

77. Plaintiff incorporate by reference each preceding paragraph of the Complaint as if fully restated herein and further allege as follows:

78. On May 29, 2012, the Defendant James Cotter seized the Properties; with the assistance of each of the above mentioned Defendants, Cotter through gross negligence, has been able to inflict damages to the Properties in excess of $300,000.00.

## COUNT FIVE

**Intentional Property Destruction**

    **(as for James Cotter, Steven Amaral, Katie Amaral, Fred Starikov, Andrew Simpson, Josh Fetterman)**

79. Plaintiff incorporate by reference each preceding paragraph of the Complaint as if fully restated herein and further allege as follows:

80. On May 29, 2012, the Defendant James Cotter seized the Properties; with the assistance of each of the above mentioned Defendants, Cotter through deliberate destruction, has been able to inflict damages to the Properties in excess of $300,000.00.

## COUNT SIX

### Violation of RICO 18 U.S.C. § 1962(c)

### (as for defendants Edward Coburn, James Cotter, Marylou Muirhead, Jeffrey Winik, Martin Walsh, William Christopher)

81. Plaintiff incorporate by reference each preceding paragraph of the Complaint as if fully restated herein and further allege as follows:

82. This claim is for relief pursuant to Title IX of the Organized Crime Control Act of 1970, Public Law 91-452, 84 Stat. 922, commonly known and referred to as RICO, codified at 18 U.S.C. § 1961, et. Seq., and in particular for violations of 18 U.S.C. § 1962. The Plaintiff also seeks declaratory and injunctive relief and monetary damages as restitution as well as treble damages to the Plaintiff for the Defendants' violation as alleged herein pursuant to 18 U.S.C. § 1964(c).

83. This claim asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, the Hobbs Act, 18 U.S.C. § 1951, and Mail Fraud, 18 U.S.C. § 1341. The Plaintiff hereby reserves all rights to file further appropriate amendments to add additional parties and causes of action.

84. The Defendants are a "person" within the meaning of 18 U.C.S. § 1961(3) and 1964(c).

85. The Boston Housing Court is an "enterprise" within the meaning of 18 U.C.S. § 1961(4) and § 1962(c), which was engaged in and the activities of which affected interstate commerce during the relevant times.

86. The Defendants Edward Coburn, James Cotter, Marylou Muirhead, Martin Walsh, William Christoper, Jeffery Winik, and U.S. Bank and Caliber are employed by or associated with an enterprise, that is, the Boston Housing Court, and did conduct or participate, directly or indirectly, in the conduct of the affairs of the Boston Housing Court through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(b) and 1961(5) and 1962(c), to wit:

(a). Multiple instances of extortion/attempted extortion under color of official right in violation of 18 U.S.C. § 1951. The Defendants extort/attempted to extort property from their owners by having an associate "purchase" the property at a reduced rate, with the understanding that receiver James Cotter's receiver hourly compensation would be $350.00, which would exceed $15,000.00 per scheme.

(b). Multiple instances of mail fraud in violation of 18 U.S.C. § 1341. The Defendants and associates utilized the United States Post Office to mail documents with false or misleading information with the intent to extort property from their owners by "purchasing" the targeted property at a reduced rate. An example of such a mailing is when the Boston Housing Court mailed to the defendants in each of the above mentioned receivership cases the various Judges orders, and when Edward Coburn, (with Martin Walsh and William Christopher's consent), and James Cotter served their various motions on all parties involved. (For example, the Plaintiff received the Boston Housing Court's Order

appointing James Cotter as receiver for the Properties via first class mail on or about May 27, 2012; and on February 26, 2009, James Cotter served his *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property* via first class mail to all parties connected to the receiver case for 12 Sutton Street. In addition, all of the motion served upon the parties for the receivership cases involving both 9 and 11 Everett Street were served via U.S. Mail.

87. By reason of violation of 18 U.S.C. § 1962(c) committed by the Defendants, the Plaintiff were injured in an as yet undetermined amount, believed to be not less than approximately $600,000.00, within the meaning of 18 U.S.C. § 1964(c).

## COUNT SEVEN

**Violation of RICO 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c) (as for defendants Edward Coburn, James Cotter, Marylou Muirhead, Jeffrey Winik, Martin Walsh, William Christopher)**

88. Plaintiff incorporate by reference each preceding paragraph of the Complaint as if fully restated herein and further allege as follows:

89. The Defendants are a "person" within the meaning of 18 U.C.S. § 1961(3) and 1964(c).

90. The Boston Housing Court is an "enterprise" within the meaning of 18 U.C.S. § 1961(4) and § 1962(c), which was engaged in and the activities of which affected interstate commerce during the relevant times.

91. The Defendants Edward Coburn, Marylou Muirhead, Jeffery Winik, Martin Walsh, William Christopher, James Cotter and U.S. Bank and Caliber are employed by or associated with an enterprise, that is, the Boston Housing Court, and did conduct or

participate, directly or indirectly, in the conduct of the affairs of the Boston Housing Court through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(b) and 1965(5) and 1962(c), to wit:

(a). Multiple instances of extortion/attempted extortion under color of official right in violation of 18 U.S.C. § 1951. The Defendants extort/attempted to extort property from their owners by having an associate "purchase" the property at a reduced rate, with the understanding that receiver James Cotter's hourly compensation would be $350.00, which would exceed $15,000.00 per scheme.

(b). Multiple instances of mail fraud in violation of 18 U.S.C. § 1341. The Defendants and associates utilized the United States Post Office to mail documents containing fraudulent information with the intent to extort property from their owners by "purchasing" the targeted property at a reduced rate. (An example of such a mailing is when the Boston Housing Court mailed the Defendants in each of the above mentioned receivership cases served their various orders, and when Edward Coburn and James Cotter served their various motions on all parties involved. The Plaintiff received the Boston Housing Court's Order appointing James Cotter as receiver for the Properties via first class mail on or about May 27, 2012; and on February 26, 2009, James Cotter served his *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property* via first class mail to all parties connected to the receiver case for 12 Sutton Street.)

92. By reason of violation of 18 U.S.C. § 1962(c) committed by the Defendants, the
Plaintiff was injured in an as yet undetermined amount, believed to be not less than
approximately $600,000.00, within the meaning of 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully pray that this Court will:

### Receivership Statute

### Violation of Civil Rights Act (42 U.S.C. § 1983)
### Declaratory Relief (28 U.S.C. § 2201)

1.  a. Declare the challenged Massachusetts law, M.G.L. c. 111, § 127I, to be
    unconstitutional under the United States Constitution and therefore unenforceable;

    b. Declare the challenged Massachusetts law, M.G.L. c. 111, § 127I, does not allow
    the appointment of a general receivership, and the court appointed receiver does
    not have the authority to sell receivership property.

    c. Declare the challenged Massachusetts law, M.G.L. c. 111, § 127I, is not
    applicable to vacant property.

2.  Issue a preliminary and permanent injunction:

    a.  Restraining Defendants, their agents, servants, and employees and all other
        persons acting on behalf of, through the authority of, or in concert with
        Defendants from enforcing or in any manner giving effect to the challenged
        Massachusetts laws, or in the alternative restrain the Defendants from placing
        vacant property into receivership;

   b. Directing Defendants:

      i. To notify those governmental officials and governmental boards and bodies of the Commonwealth of Massachusetts, the activities which said Defendants are authorized by law to supervise, direct, or coordinate, that the provisions of the challenged Massachusetts law is unconstitutional and void;

      ii. To instruct those governmental officials and governmental boards and bodies to cease enforcing or in any manner giving effect to the challenged Massachusetts law;

3. Award Plaintiff reasonable and necessary attorneys' fees, expert fees, and costs associated with bringing and prosecuting this action, pursuant to 42 U.S.C. § 1988; and

4. Grant any and all other necessary and proper relief to which the Plaintiff is entitled, pursuant to 28 U.S.C. § 2202.

**Negligence**

1. Award Plaintiff for damages caused by all Defendants gross negligent actions, estimated to be in excess of $300,000.00.

2. For any further and other relief the Court deems just and proper.

**Intentional Property Destruction**

1. Award Plaintiff for damages caused by all Defendants deliberate destruction actions, estimated to be in excess of $300,000.00.

2. For any further and other relief the Court deems just and proper.

**Violation of RICO 18 U.S.C. § 1962(c) and Violation of RICO 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c)**

1. Judgment be entered against by reason of the violation of 18 U.S.C. § 1962(c) committed by Defendants Edward Coburn, James Cotter, Marylou Muirhead, Jeffery Winik, Martin Walsh and William Christopher:

   a. In an undetermined amount not less than Six Hundred Thousand Dollars ($600,000.00) upon the First Claim for Relief, for violation of 18 U.S.C. § 1962(c), the sum duly trebled in accordance with 18 U.S.C. 1964(c).

   b. In an undetermined amount not less than Six Hundred Thousand Dollars ($600,000.00) upon the Second Claim for Relief, for violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c), the sum duly trebled in accordance with 18 U.S.C. § 1964(c).

   c. For the cost of suit including attorneys' fees in accordance with 18 U.S.C. § 1964(c), interest and costs.

2. Equitable relief against Defendant in the form of such injunctive and related relief as might be appropriate in accordance with 18 U.S.C. § 1964(a), including:

   a. Reasonable restrictions on the future activities and investments of the Defendant.

   b. Any restrictions which may be appropriate on future conduct of activities.

   c. For such other damages, relief and pre and post-judgment interest as the Court may deem just and proper.

**JURY DEMAND**

The Plaintiff, James Dickey, respectfully requests a jury trial.

by Pro Se Plaintiff:

James Dickey
8 NewBridge Road
Sudbury, MA  01776
August 4, 2016                                 978.443.2504

**VERIFICATION**

I, James Dickey, do hereby dispose under the pains of penalties of perjury that I have read the foregoing complaint and attest and that I believe that, to the best of my knowledge, the complaint is true and accurate.

August 4, 2016

James Dickey